# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IAN ALLINGSTON-ROSE, also known as DENNIS JOSEPH JONES, | MASTER FILE: 07-CV-3184 (WJM) |
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, | HON. WILLIAM J. MARTINI |
| Respondent. | |

Ian Allingston-Rose
MC # 115125
C/O Mrs. Shirley Tyrrell
1911 Albemarle Road
# 6J
P.O. Box 266
Brooklyn, NY 11226

(*Petitioner*)

Amy S. Winkelman
Office of the U.S. Attorney
970 Broad Street
Room 502
Newark, NJ 07102

L. Judson Welle
Office of the U.S. Attorney
970 Broad Street
Newark, NJ 07102

(*Counsels for Respondent*)


**WILLIAM J. MARTINI, U.S.D.J.:**

Petitioner moves under 28 U.S.C. § 2255 to vacate a sentence that this Court imposed after Petitioner pled guilty to the crime of illegally reentering the United States. Petitioner argues that he failed to receive a speedy trial on this charge and that this Court's sentence was excessive.  Petitioner also argues that the deportation underlying this conviction was unlawful because the Immigration and Naturalization Service ("INS") lacked grounds to deport him and because INS deported Petitioner before he had an opportunity to exhaust all of his options for appeal.  This Court finds that Petitioner has waived his right to file this motion.  This Court further finds that Petitioner's arguments are either moot or without merit.  Accordingly, Petitioner's motion is **DENIED**.

## I.    FACTS AND PROCEEDINGS

Petitioner is a native and citizen of Guyana.  (Pet. at 4, 21.)  He immigrated to the United States in 1988 and was admitted as a permanent legal resident.  (Pet. at 4.)  Since then, Petitioner has twice been charged with drug-related offenses and has twice been deported.

Petitioner's first drug-related conviction came in 1998, when Petitioner was arrested in Florida on two counts.  (Pet. at 4–5, 18.)  The first count charged Petitioner with possession of marijuana with intent to sell, in violation of section 893.13(1)(a)(2) of the Florida Statutes.  (Pet. at 18.)  The second count charged Petitioner with possession of scales with the intent of using them in connection with a controlled substance, in violation of section 893.147(1) of the Florida Statutes.  (Pet. at 18.)  Petitioner pled nolo

2

contendere in a Florida Circuit Court to the first count, and the State of Florida agreed to drop the second count. (Pet. at 20.)

Following this conviction, INS commenced removal proceedings against him.[1] (Pet. 21.) INS charged that Petitioner was subject to removal for violating section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), which allows deportation of an alien who commits an "aggravated felony." (Pet. 21.) INS also charged that Petitioner was subject to removal for violating section 237(a)(2)(B)(i) of the INA, 8 U.S.C. § 1227(a)(2)(B)(i), which allows deportation of an alien convicted of violating a state law relating to a controlled substance other than a single offense involving possession of thirty grams or less of marijuana for personal use. Based on these charges, the immigration judge ordered Petitioner deported. (Pet. 22, 24.)

Petitioner appealed this decision to the Board of Immigration Appeals ("BIA"), which affirmed the immigration judge's order. (Pet. 24–26.) Petitioner then filed a motion for reconsideration of the BIA's decision. (Pet. 5.) The BIA denied Petitioner's motion for reconsideration on August 25, 1999, and Petitioner was deported that day. (Pet. 5–6.)

---

[1]As of March 1, 2003, INS ceased to exist and its responsibilities transferred to the Bureau of Immigration and Customs Enforcement ("BICE"), within the Department of Homeland Security. Garcia v. Attorney Gen. of the U.S., 462 F.3d 287, 289 n.2 (3d Cir. 2006).

At some point, Petitioner illegally returned to the United States, and on December 11, 2003, BICE officials arrested Petitioner on federal drug charges.  (Pet. 12.)  The complaint accused Petitioner with possessing more than 500 grams of cocaine with intent to distribute.  (Opp'n to Pet. Ex. 1 at 2.)

Petitioner was not indicted on these charges until August 31, 2005.[2]  (Ex. 1 at 4.)  The indictment charged Petitioner with one count of possession of 500 grams or more of cocaine with intent to distribute and with another count of conspiracy to do the same.  (Opp'n Ex. 2.)  The indictment also charged Petitioner with one count of illegally reentering the United States after his deportation, in violation of 8 U.S.C. § 1326(a) and § 1326 (b)(2).  (Ex. 2.)

Petitioner eventually entered into a plea agreement on these federal charges.  (Opp'n Ex. 3.)  Petitioner pled guilty to illegally reentering the United States, and in exchange the government dropped the other charges.  (Ex. 3.)  In the plea agreement, Petitioner waived his rights to an appeal or collateral attack, including the right to file a § 2255 motion, with respect to any challenge to "the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 17."  (Ex. 3 at 4, 7.)  Based on that plea, this

---

[2]During Petitioner's detention on the federal charges, the State of New Jersey indicted Petitioner for resisting the arrest of the BICE officers and for aggravated assault. (Pet. at 12; Opp'n Ex. 6 at 7.)  Petitioner eventually entered a plea agreement and accepted a lesser charge of "eluding."  (Pet. at 12.)  A New Jersey court sentenced Petitioner to four years in prison for this charge.  (Pet. at 12–13.)

Court sentenced Petitioner to time already served.  (Opp'n Ex. 5 at 2.)

As Petitioner was still in the United States illegally, BICE sought again to deport him.  On June 27, 2006, a BICE official issued a Warrant of Removal/Deportation for Petitioner.  (Opp'n Ex. 8.)  The warrant alleged that Petitioner was removable under section 241(a)(5) of the INA, 8 U.S.C. § 1231(a)(5), as an alien who had illegally reentered the United States after having been previously removed.  (Ex. 8.)

While in detention awaiting deportation, on July 3, 2007, Petitioner filed the instant § 2255 motion to vacate the sentence imposed by this Court for the crime of illegal reentry.  (Pet. 1.)  In this motion, Petitioner makes two categories of arguments.

First, Petitioner challenges the legality of his proceedings before this Court.  He argues that this Court illegally enhanced his sentence based on a finding that his Florida drug offense was a "trafficking" offense.  (Pet. at 10.)  He also argues that the exceptionally long delay between his arrest in 2003 and his indictment in 2005 violates his right to a speedy trial.  (Pet. at 14.)  Petitioner further alleges that this Court erred in several miscellaneous ways: by not indicting him before a magistrate on the charge of reentry, by not indicting him on the drug charges, and by appointing him ineffective counsel who failed to file a motion to dismiss the drug charges.[3]  (Pet. at 14–15.)

Second, Petitioner challenges the legality of his first deportation hearing, which

---

[3]As explained above, Petitioner was indicted on both the drug charges and the illegal reentry charge.  (Ex. 2.)

underlies his illegal reentry conviction.  (Pet. at 4.)  He argues that INS deprived him of the opportunity for judicial review of his removal by deporting him before he could appeal to a federal court.  (Pet. at 6.)  He also argues that the Florida drug charge underlying his first deportation was not a sufficient grounds for removal.  (Pet. at 8–9.)

Roughly three weeks after filing his § 2255 motion, Petitioner was again deported. (Opp'n Ex. 8 at 2.)

The government now opposes Petitioner's motion.  It argues that Petitioner waived any right to challenge his conviction by signing the plea agreement.  (Opp'n at 3.)  The government also argues that Petitioner's motion is moot since he has already been deported.  (Opp'n at 3.)

## II.    DISCUSSION

A § 2255 motion is a substitute for habeas corpus that allows a defendant to attack his criminal sentence.  See Kaufman v. United States, 394 U.S. 217, 222–23 (1969).  The scope of this remedy is limited, allowing a defendant to attack his sentence only on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." § 2255; United States v. Addonizio, 442 U.S. 178, 185 (1979).  The § 2255 remedy is available only to prisoners presently "in custody under sentence of a court."

Petitioner attacks his sentence on two general grounds.  First, Petitioner argues that errors in his federal criminal proceedings rendered his sentence unlawful.  Second, Petitioner argues that his first deportation—upon which rests his conviction for illegal reentry—was unlawful.

Petitioner's motion fails.  Petitioner's plea agreement bars him from making this motion.  Also, Petitioner's challenge to the procedures in this Court is moot given that he will remain removable and deported unless he can collaterally attack his underlying deportation.  Finally, Petitioner puts forth no grounds for collaterally attacking this underlying deportation.  Accordingly, Petitioner's motion is denied.

## A.    Petitioner's Plea Agreement

It is well established that a defendant may validly waive his right to appeal or otherwise collaterally attack his conviction.  United States v. Shedrick, 493 F.3d 292, 297 (3d Cir. 2007); United States v. Khattak, 273 F.3d 557 (3d Cir. 2001).  Courts will honor such a waiver unless either the defendant did not knowingly and voluntarily agree to it or the waiver would work a miscarriage of justice.  Shedrick, 493 F.3d at 297; Khattak, 273 F.3d at 562–63.

Here, the evidence shows that Petitioner knowingly and voluntarily agreed to this waiver.  Petitioner's plea agreement—which he signed—stated clearly that he waived "certain rights to file an appeal, collateral attack, writ or motion after sentencing,

including but not limited to . . . a motion under 28 U.S.C. § 2255."[4]  (Opp'n Ex. 3 at 4.)
Petitioner then filled out an application for a guilty plea—in which he again
acknowledged this waiver, stating "I understand that my plea agreement provides that
under certain circumstances I have waived my right to appeal or collaterally attack the
sentence imposed in this case."  (Opp'n Ex. 4 at 6.)  At the hearing, this Court questioned
Petitioner's understanding of this waiver, but Petitioner again affirmed that he understood
that he was waiving any rights to appeal this Court's sentence.  (Tr. at 10.) Based on these
facts, this Court found that Petitioner's plea was knowing and voluntary (Tr. at 16–17),
and this Court finds no reason to question that finding now.[5]

Because Petitioner's waiver was knowing and voluntary, the only grounds this
Court might have to ignore that plea would be if its enforcement would work a
miscarriage of justice.  Shedrick, 493 F.3d at 297; Khattak, 273 F.3d at 562–63.  Courts
will find a miscarriage of justice only in the most compelling circumstances, such as
where a sentence was imposed based on a constitutionally impermissible factor such as
race.  Khattak, 273 F.3d at 562.  In contrast, the errors that Petitioner alleges are run of
the mill and do not constitute a miscarriage of justice.  As the Eleventh Circuit has stated:

_____

[4]The plea agreement made Petitioner's waiver contingent upon this Court's
imposing a sentence that falls within a sentencing guidelines offense level of 17.  (Ex. 3
at 7.)  This Court imposed such a sentence (Tr. 14–15), so the plea agreement's waiver is
in effect.

[5]Indeed, Petitioner does not appear to argue that his plea was not knowing and
voluntary.  Rather, Petitioner only alleges that his first appointed attorney in this case
initially advised Petitioner to sign a plea agreement but he refused.  (Pet. at 13.)

> A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous . . . . While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded.

United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999), *quoted in* Khattak, 273 F.3d at 561–62. Furthermore, even notwithstanding the waiver, Petitioner's motion is without merit, as explained below.

### B.    The Proceedings in This Court

Petitioner argues that his proceedings in this Court were deficient and accordingly requests that this Court overturn Petitioner's illegal reentry sentence. (Pet. at 12–14.) This argument is moot, however, since Petitioner has already served this sentence (Opp'n Ex. 5 at 2) and thus overturning it would not bring Petitioner any relief. See Okereke v. United States, 307 F.3d 117, 121 (3d Cir. 2002) (holding that a defendant's § 2255 motion was moot "[b]ecause [defendant] has not only completed his prison sentence but also has been deported from the United States"). Nor would a successful § 2255 motion bring Petitioner relief from his current state of deportation. Petitioner's second removal and deportation were not the result of this Court's conviction for illegal reentry, but were rather a reinstatement of his original deportation. (Ex. 8 at 1.) Thus to obtain any relief, Petitioner must successfully challenge his original deportation.

### C.    Petitioner's First Removal Hearing

Defendants convicted of illegal reentry may in certain circumstances challenge their conviction by collaterally attacking the underlying order of deportation. United States v. Mendoza-Lopez, 481 U.S. 828, 839 (1987); United States v. Charleswell, 456 F.3d 347, 351 (3d Cir. 2006). An alien wishing to collaterally attack a previous deportation order in such a manner must meet three requirements: (1) he must have exhausted any available administrative remedies, (2) the deportation hearing must have effectively eliminated his right to obtain judicial review, and (3) the prior hearing must have been "fundamentally unfair." 8 U.S.C. § 1326(d); Charleswell, 456 F.3d at 351.

Petitioner here satisfies the first requirement. In his first deportation proceeding, Petitioner appealed the immigration judge's decision to the BIA, and when the BIA affirmed, Petitioner filed a motion for reconsideration, which the BIA denied. (Pet. at 5–6.) Petitioner at this point had exhausted all of his administrative options.

Petitioner cannot, however, satisfy the second requirement (that the INS effectively eliminated his right to obtain judicial review). Petitioner argues that INS denied him the right to obtain judicial review by deporting him before he could appeal. (Pet. 6.) But deportation does not necessarily preclude an appeal. See Bejar v. Ashcroft, 324 F.3d 127, 132 (3d Cir. 2003) (holding that subsequent to an alien's deportation "[t]his Court, however, retains jurisdiction to consider whether [the alien's] removal was illegal"). Indeed, the immigration laws specifically provide for deportation even during the pendency of an appeal. See 8 U.S.C. § 1252(b)(3)(B) (stating that service of a

10

petition requesting review of an order of removal does not stay the actual removal pending the court's decision on the petition unless the court orders otherwise). Petitioner's deportation before his exhaustion of all appellate remedies did not effectively eliminate his right to judicial review.

With respect to the third requirement, there is no indication that Petitioner's hearing was unfair. The only error that Petitioner asserts in this hearing is that INS had insufficient grounds to deport him. (Pet. 8) This claim is without merit.

The INS did in fact have grounds upon which to deport Petitioner. Section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), allowed the INS to deport an alien who commits an "aggravated felony." The definition of "aggravated felony" is found in section 101(a)(43) of the INA, 8 U.S.C. § 1101(a)(43), and includes "illicit trafficking in a controlled substance,"such as possession of a controlled substance with intent to sell. See Gerbier v. Holmes, 280 F.3d 297, 313–14 (3d Cir. 2002). Before Petitioner's first removal proceedings, he had pled nolo contendere to possession of marijuana with intent to sell, in violation of section 893.13(1)(A)(2) of the Florida Statutes. (Pet. at 18, 20.) Such a crime falls within the definition of "drug trafficking" and is thus an offense for which Petitioner may be deported. Also, section 237(a)(2)(B)(i) of the INA, 8 U.S.C. § 1227(a)(2)(B)(i), allowed the INS to deport an alien who has been convicted of a state law relating to a controlled substance other than a single offense involving possession for one's own use of thirty grams or less of marijuana. Given that

11

Petitioner had been convicted of possession of marijuana with intent to sell, this too constituted grounds for deportation.  The INS appropriately relied on both of these sections to deport Petitioner.  (Pet. at 22, 24.)

Petitioner argues that the INS could not have deported him for "trafficking in a controlled substance" because the Florida crime to which he pled disjunctively prohibits many things, namely to "sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance."  (Pet. at 8–9.)  Petitioner reasons that it is not clear whether the Florida Circuit Court convicted him of possessing marijuana with an intent to sell, which is a "trafficking" crime, Gerbier, 280 F.3d at 314, or of manufacturing marijuana, which may not be a "trafficking crime."  See Garcia v. Attorney Gen. of U.S., 462 F.3d 287, 293 n.9 (3d Cir. 2006) (holding that manufacturing a controlled substance does not always imply "trafficking" for the purposes of determining whether a defendant has committed an aggravated felony).  Petitioner's argument suffers from two fatal defects.

First, even if Petitioner is correct that the Florida Circuit Court did not convict him of an aggravated felony and that INS thus could not deport him under section 237(a)(2)(A)(iii) of the INA, Petitioner doesn't address INS's other ground for deporting him.  As explained above, the INS also properly deported Petitioner for his conviction of a state law relating to a controlled substance. § 1227(a)(2)(B)(i).

Second, Petitioner's argument with respect to his conviction under a "disjunctive"

12

statute is unpersuasive.  The Third Circuit has stated that when a criminal statute is

phrased in the disjunctive and it is unclear whether an alien subject to removal

proceedings under section 237(a)(2)(A)(iii) of the INA has been convicted of a

"trafficking" violation or another type of violation, the immigration court may examine

the record of that conviction to aid its determination.  Garcia, 462 F.3d at 290–93.  The

immigration court may examine the complaint and even the facts surrounding the

conviction.  Jeune v. Attorney Gen. of the U.S., 476 F.3d 199, 202 (3d Cir. 2007); Garcia,

462 F.3d at 291–92.  Here, the record clearly shows that Petitioner pled guilty to the

portion of section 893.13(1)(A)(2) of the Florida Statutes that penalizes possession with

intent to sell.  For example, the initial information for this charge lists only that phrase of

section 893.13(1)(A)(2).  (Pet. at 18.)  Furthermore, this initial information also contained

a second count accusing Petitioner of possessing "scales, with the intent that [these

scales] be used for unlawfully administering any controlled substance."  (Pet. at 18.)  This

Court takes judicial notice of the fact that drug dealers commonly use scales to weigh

drugs for packaging.  See United States v. Jenkins, 90 F.3d 814, 817 (3d Cir. 1996).

Finally, there is no evidence in the record to suggest that Petitioner was manufacturing

marijuana, rather than attempting to sell it.  The only possible evidence for such a

proposition is the Florida Circuit Court's entry of Petitioner's plea in which the court

broadly set forth all the provisions of section 893.13(1)(A)(2).  This generalization is

insufficient to overcome the weight of evidence suggesting that Petitioner pled guilty to

possession with intent to distribute.  There is no doubt that Petitioner was convicted of a "trafficking" offense, and thus the INS properly deported him.

## III.   CONCLUSION

In conclusion, Petitioner's § 2255 motion to vacate his sentence is wholly without merit.  It is accordingly **DENIED**.  A suitable Order accompanies this Opinion.




s/ William J. Martini_____

William J. Martini, U.S.D.J.

14